**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DELTA RESEARCH CORPORATION, a
Michigan corporation,
                              Plaintiff,                    CASE NO. 04-60046

v.                                                          HON. MARIANNE O. BATTANI

EMS, INC., an Ohio corporation, DAVID
MOORE, an individual, and S.K. RIGGING CO.,
INC., an Ohio corporation, jointly and severally,

                              Defendants.
_____/


**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND GRANTING IN PART AND DENYING**
**IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

       Before the Court are Plaintiff Delta Research Corporation's ("Delta") Motion for

Summary judgment against S.K. Rigging Co. (Doc. # 43) and S.K. Rigging Co.'s Motion for

Summary Judgment against Plaintiff (Doc. # 42).

       The Court heard oral argument on April 25, 2005.  At the conclusion of the hearing,

the Court took the matter under advisement.[1]  For the reasons stated below, the Court

DENIES Plaintiff's Motion for Summary Judgment and GRANTS in part and DENIES in part

S.K. Rigging, Inc.'s Motion for Summary Judgment.

_____

       [1]Cross-motions for summary judgment by Defendant EMS, Inc. and Plaintiff were
also argued.  The Court resolved those motions by separate opinion and order.  <u>See</u>
Doc. # 60.

## I.  STATEMENT OF FACTS

Plaintiff, Delta Research Corp. ("Delta"), is a tool and die company.  In October 2003, it purchased a used G&L Boring Machine (the "boring mill") for $250,000, at a liquidation sale in Cincinnati, Ohio.  According to Plaintiff, this type of machinery typically is available new, and only by custom order.  Delta planned to use the machine to provide goods to International Machine Service, Inc. and they entered into a contract in the amount of $291,600.  See Pl.'s Ex. B.  The contract included a profit margin of 26%, or $75,816.  Pl.'s Ex. I.

Delta contracted with Defendant S.K. Rigging Co. (S.K. Rigging), to load and transport the mill from Cincinnati to Delta's principal place of business in Livonia, Michigan.  Pl.'s Ex. C.  Delta insured the mill for the amount of the purchase price.[2]

S.K. Rigging hired Defendant EMS, Inc. (EMS) to supply a flatbed semi-trailer and cab and drive the boring mill to Livonia.  After the boring mill was destroyed en route, Delta sought a replacement machine, but was unable to purchase one.  Consequently, Plaintiff was forced to cancel its agreement with International Machine Services, Inc.  See Pl.'s Exs. I and J.

Thereafter, Plaintiff filed its two count complaint, alleging a violation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (Count I), and a claim of negligence (Count II).  See First Amended Complaint.  Plaintiff moves for summary judgment on Count I on liability as well as damages.  S.K. Rigging moves for summary judgment on the both counts of the First Amended Complaint.

---

[2]The insurer's subrogation suit, Atlantic Mutual v. SK Rigging & EMS Transport, No. 04-60286, is pending before this Court.

2

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In assessing cross-motions for summary judgment, each movant must individually fulfill the requirements articulated in Rule 56.  The court is not required to grant summary judgment as a matter of law for either side; rather, the court evaluates each motion on its merits.

## III.  ANALYSIS

The cross-motions for summary judgment raise three issues: whether Plaintiff's transaction with S.K. Rigging falls within the purview of the Carmack Amendment; and, if it does, what damages are available; and the viability of Plaintiff's negligence claim.  The Court turns its attention first to the Carmack Amendment, which governs the liability of carriers as well as freight forwarders for goods damaged during shipping.

### A.  The Carmack Amendment

The Carmack Amendment imposes liability on carriers for "actual loss or injury" to goods damaged in interstate transport.  49 U.S.C. § 14706(a)(1); <u>Chubb Group of Ins. Cos. v. H.A. Transp. Systems Inc.</u>, 243 F.Supp.2d 1064, 1068 (C.D. Cal. 2002).  To establish a prima facie case under the Carmack Amendment, a plaintiff must show: (1) the goods were undamaged prior to shipment; (2) the goods arrived in damaged condition; and (3) the action caused plaintiff's damages. <u>Id.</u>  The Carmack Amendment liability scheme distinguishes between "carriers," "freight forwarders" and "brokers."  Only "carriers" and "freight forwarders," not "brokers" can be liable to the shipper of goods for damages during transit.  <u>Id.</u> at 1068-69.

The parties dispute the applicability of the Carmack Amendment to S.K. Rigging. Plaintiff asserts that, as matter of law, Defendant acted as a freight forwarder within the meaning of the Carmack Amendment.  S.K. Rigging asserts that the First Amended Complaint (FAC) fails to state a claim for relief because its status for purposes of the Carmack Amendment is not pleaded.  In the alternative, S.K. Rigging asks the Court to find that Delta has failed to establish, as a matter of law, that S.K. Rigging is subject to the Carmack Amendment.

### 1.  Pleading burden

The FAC contains no allegation identifying S.K. Rigging as a motor carrier or a freight forwarder.  Defendant asserts that the Court, therefore, must dismiss Count I pursuant to Fed.R.Civ.P. 12 (c).

"In reviewing a motion brought under Rule 12(c), the court construes the complaint

4

in the light most favorable to the plaintiff, accepts all of the complaint's factual allegations as true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001). The court must also consider the pleading requirements set forth in Federal Rule of Civil Procedure 8. See E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2001). Rule 8 provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although this pleading standard is quite liberal, a plaintiff must " 'allege a factual predicate concrete enough to warrant further proceedings.' " Found., for Interior Design Educ. Research v. Savannah Coll. of Art & Design, 244 F.3d 521, 530 (6th Cir. 2001) (citation omitted). In other words, the "complaint. . .must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 406 (6th Cir.1998) (internal quotation marks and citation omitted).

A review of the FAC shows that Delta alleges that S.K. Rigging "contractually undertook the obligation of selecting a competent carrier and arranging for the shipment [of the boring mill] to Plaintiff's place of business. As such, the liability of EMS. . .is equally attributable to S.K. Rigging." FAC at ¶ 22. It is undisputed that Plaintiff's FAC does not identify S.K. Rigging as either a motor carrier or a freight forwarder. Nevertheless, at this stage of the lawsuit, the Court is satisfied that Plaintiff has advanced a viable legal theory. Defendant had notice that Plaintiff was pursuing a Carmack Amendment claim, and S.K. Rigging's conduct relative to the parties' transaction presents a viable theory of recovery.

5

### 2. Status under the Carmack Amendment

Delta moves for summary judgment on the ground that S.K. Rigging is a freight forwarder, and therefore responsible for losses relating to the boring mill. A freight forwarder is defined under the statute as:

> a person holding itself out to the general public. . .to provide transportation of property for compensation and in the ordinary course of its business–(a) assembles and consolidates, or provides for assembling and consolidating, shipments and performs and provides for break-bulk and distribution operation of the shipment; (b)assumes responsibility for the transportation from the place of receipt to the place of destination; and (c) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8). Only the applicability of subsection (a) is in dispute for purposes of this motion.

The Supreme Court has held that the term "assembles and consolidates" means the assembly or consolidation of less than carload quantities into carload shipments. See Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Acme Fast Freight, Inc., 336 U.S. 465, 467, 484-486 (1949). Delta asserts that S.K. Rigging assembled and consolidated the shipments of Delta's cargo. Specifically, the property came to Delta's business in three separate shipments; two contained items and parts of the damaged boring mill and other pieces of equipment, separate and distinct from the boring mill. Delta's Exs. D and L, 18, 1-22. The shipments were made on separate days by two different trucking companies. Therefore, Delta concludes that S.K. Rigging separated parts of the boring mill and took responsibility for arranging the two separate shipments for transportation. Delta observes that many courts have held that a forwarder who picks up less than cargoed shipments at a shipper's place of business, consolidates the shipment, engages to deliver it safely to its ultimate destination and who charges a rate covering the entire transportation will be held

6

to common carrier liability. See e.g. Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1362 (7th Cir.1997); Transportation Revenue Mgmt Inc., v. First NH Inv. Servs. Corp., 886 F.Supp. 884, 886-87 (D.D.C.1995).

Even if Delta could show that S.K. Rigging assembled and consolidated shipments, its request for summary judgment must be denied. The function of a freight forwarder distinguishes it from the function performed by S.K. Rigging here. The function as described in detail by the Supreme Court in United States v. Chicago Heights Trucking Co., 310 U.S. 344, 345-46 (1940), hardly coincides with S.K. Rigging's characterization of its business. Specifically, the Supreme Court elaborated on the function of freight forwarders as follows:

> Forwarders utilize common carriers by rail and motor truck to transport goods owned by others. They solicit and obtain many small shipments, from various points within an area, and cause them to be carried in less than truck-load or carload lots to a concentration center within the area. There they are assembled by the forwarder for further transportation in truck-load or carload lots. Although the forwarder gives owners of individual small shipments his own contract corresponding in form to through bills of lading and assumes responsibility for safe through carriage, the forwarder customarily arranges for the pickup, assembly and transportation of the shipments by carriers for hire, and the forwarders, not the owners of the goods, select the carriers and route the shipments. Upon arrival of a truck-load or carload of the assembled small shipments at a distribution center, the bulk shipment is broken up, the forwarder separates and takes possession of the original small shipments and arranges, where necessary, their further carriage to their various final destinations in the area served by the particular distribution point. In this final carriage of the small shipment to its ultimate destination, the forwarder again utilizes carriers for hire to move these less than truck-load or carload lots. Thus, forwarders may use the service of carriers to assemble shipments of less than truck-load or carload lots at their concentration center, to transport the assembled truck-load or carloads to a distribution center and to carry the broken up small shipments beyond their break-bulk distribution center.

Id. In contrast, S.K. Rigging observes that "riggers move machines for repair or maintenance services, partially disassemble them for repair or maintenance services, move

7

them from one portion of a manufacturing plant to another portion of a manufacturing plant, and they may even be required to assist someone in moving a piece of machinery from one state to another." S.K. Rigging's Resp. Brief at 8. Based on the functional differences, S.K. Rigging asks the Court to reject Delta's assertion that when a machinery rigger hires the services of an interstate motor carrier to move the machinery once it is loaded onto the truck, the rigger has subjected itself to the Carmack Amendment because it is acting as a freight forwarder. This Court agrees that the conduct at issue does not render S.K. Rigging a freight forwarder for purposes of the Carmack Amendment.

In addition, Delta's characterization fails because it has made no representation to the Court regarding the second requirement under subsection (a) of the statute. Plaintiff has cited no facts and advanced no argument in support of the statutory requirement that S.K. Rigging performs and provides for break-bulk and distribution operation of shipments in its ordinary course of business. Consequently, the Court finds that the Plaintiff has failed to show, as a matter of law, that S.K. Rigging acted as a freight forwarder.

Likewise, S.K. Rigging has failed to establish it is entitled to summary judgment on its claim that if anything, it acted as a broker, and, therefore is entitled to summary judgment on the Carmack Amendment claim. Although it is undisputed that the Carmack Amendment does not apply to brokers, Chubb Group, 243 F.Supp. 2d at 1068-69, the Court finds questions of facts exist as to S.K. Rigging's status under the Carmack Amendment. The facts create an inference that it acted as a carrier.

The statute broadly defines a "motor carrier" as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12); H.R. Rep. No. 103-677, at 85, reprinted in 1994 U.S.C.C.A.N. 1715, 1757 ("The term motor carrier. . .has a broad

8

connotation."). "Transportation" is defined to include the movement of property or passengers by motor vehicle as well as "services related to that movement, including, arranging for, receipt, delivery, elevation, transfer in transit,. . .handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(19) (B).

Section 13102 defines a broker as:  "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C § 13102(2).   The Code of Federal Regulations adds:  "motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."  49 C.F.R. § 371.2(a) (emphasis added).

The difference between a carrier and a broker is often blurry.  The fact that S. K. Rigging is not a regulated interstate motor carrier is not dispositive of the issue of liability under the Carmack Amendment.  See  Ensco, Inc. v. Weicker Transfer and Storage Co., 689 F. 2d 921, 925 (9th Cir. 1982) ("A carrier's status as a common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be.") (citations omitted).   The law determines status according to the services offered by an entity, rather than by its corporate character or declared purpose.  Mass v. Braswell Motor Freight Lines, Inc., 577 F.2d 665, 667 (10th Cir. 1978) (citing Ensco, 689 F.2d at 925). Thus, S.K. Rigging may be liable as a common carrier if it acts as one, even if it is not licensed.  Id.  Nor is ownership of the vehicles used to transport the goods dispositive of

9

whether S.K. Rigging was providing transportation or arranging for transportation with a third party.  See Custom Cartage, Inc. v. Motorola, Inc., 1999 WL 965686 No. 98 C 5192 (N.D. Ill.  Oct. 15, 1999) (deciding whether the defendant was a carrier or a broker).  The Courts look at whether the party holds itself out to the public generally as the actual transporter of goods. Syracuse Plastics, Inc. v. Guy M. Turner, 959 F.Supp. 147, 150 (N.D. N.Y. 1997) (finding a company that engaged in rigging operations was not exempt from Carmack Amendment); Florida Power & Light Co. v. Federal Energy Regulatory Comm'n, 660 F.2d 668, 674 (5th Cir. 1981); Market Transport, Ltd. v. Maudlin, 301 Or. 727, 725 P.2d 914 (1986), as well as the services provided under the contract.  Custom Cartage, Inc., supra.

Although S.K. Rigging provided services other than transportation, at issue here is the contract and what services were provided to Plaintiff under that contract.  The evidence in this case shows that Plaintiff entered into an agreement with S.K. Rigging to load and supply trucking for the boring mill, a service for which Plaintiff paid $10,155.  Def.'s Ex.6. Certainly, S.K. Rigging handled the specialized lifting and loading.  According to the invoice, S.K. Rigging, also "furnished labor and equipment to load equipment at Cincinnati Machine, 2 flatbed trucks."  Id.  A delivery date is included on the invoice.  The logo identifies S.K. Rigging as a "Machinery Mover[]".  Id.

These facts create an inference that S.K. Rigging held itself out to Plaintiff as a transporter of property.  It included the cost of the two flat bed trucks and invoiced Plaintiff directly for the entire loading and transportation process.  Further, Robert Sakuta, President of Delta, testified at his deposition that he did not speak to EMS prior to the shipment of the boring mill, he was unaware that someone other than S.K. Rigging would actually transport

10

the boring mill; and that he customarily uses a rigging company that delivers the cargo with its own truck.

There is also evidence undermining a determination that S.K. Rigging held itself out to Delta or the public as a transporter. Sakuta admitted that he never asked anyone whether a S.K. Rigging truck would be transporting the mill because it did not matter to him, as long as the mill got to Livonia. Def.'s Ex. 2. Thus, the record shows that Sakuta never inquired as to how the machine would be transported. Moreover, Sakuta learned of S.K. Rigging through a preapproved list by the auction company of riggers, not motor carriers.

Although S.K. Rigging urges the Court to find it, at most, acted as a broker, the absence of certain facts undermines a finding, as a matter of law, that it acted as a broker in this transaction. There is no evidence that it worked as an agent for EMS, Inc. The invoice does not reflect payment of a brokerage commission (as a percentage of the freight charge) for its services. There is no evidence that Delta contacted S.K. Rigging regarding transportation only after it was unable to locate a carrier. In sum, the Court finds genuine issues of material fact preclude an award of summary judgment to either party.

The Court's decision is supported by a review of case law relative to this dispute. Although courts have formulated tests for determining in what status a carrier was acting, the issue of status typically arises in the context of whether a carrier was acting as a common carrier or a contract carrier, see e.g. Thrasher Trucking Co. v. Empire Tubulars, Inc. 983 F.2d 46 (5th Cir. 1993) (recognizing that a single carrier can act as  a common carrier or a contract carrier, varying from job-to-job), or whether a common carrier was acting as a broker, compare CGU Int'l Ins. v. Keystone Lines Corp., 2004 WL 1047982 at *4, No. C-02-3751 (N.D. Cal. May 4, 2004) (observing that defendant never assumed

11

responsibility for shipment, that it was contacted because locating carriers was its speciality, that it received a brokerage commission and that it never took possession of the freight). In contrast here, there is no concession by S.K. Rigging that it acts in any way that is subject to the Carmack Amendment. S.K. Rigging observes that motor carriers and freight forwarders must be registered with the Secretary of Transportation, see 49 U.S.C. §§ 13902 , 13903. S.K. Rigging is not. Here the issue of whether S.K. Rigging held itself out to be a carrier or whether it acted as a broker must be decided by the finder of fact. See Just Take Action, Inc. v. GST (Americas) Inc., 2005 W.L. 1080597, No. 04-3024 (D. Minn. May 6, 2005) (factual disputes as to whether the defendant acted as a carrier or broker precluded an award of summary judgment).

Because the Court has denied Plaintiff's request for summary judgment on S.K. Rigging's liability under the Carmack Amendment, it denies Delta's request for summary judgment on damages.

### B. Negligence

In Count II, Plaintiff alleges that S.K. Rigging owed Plaintiff a duty to load the boring mill properly and failed to do so; and that S.K. Rigging had a duty to provide or arrange for the transport of Plaintiff's boring mill without damage and failed to do so. Defendant asserts that it is entitled to summary judgment on Count II. The Court agrees.[3]

---

[3]The Court observes that Plaintiff did not allege a claim for breach of contract in its FAC. Nevertheless, S.K. Rigging raised the futility of such a claim in its Motion for Summary Judgment. In its response, Plaintiff argues that Defendant contracted to provide loading and transportation of the boring mill, and it did not. S.K. Rigging asserts that it did not assume liability for damage during transport, and that it did, in fact, provide for delivery of the boring mill. Delta's claim sounds in negligence, not breach of contract. It failed to plead a breach of contract claim, and it may not proceed on this theory.

12

In the event the fact finder determines that S.K. Rigging was acting as a common carrier, any state common law action against it is preempted. The Carmack Amendment serves as a shipper's exclusive remedy for damaged property and preempts common law causes of actions; however, because "brokers" are excluded from the Carmack Amendment's remedial provisions, they can be held liable under state common law tort or breach of contract theories. See Intech, Inc. v. Consol., Freightways, Inc., 836 F.2d 672, 677 (1st Cir. 1987); R.H. Fulton v. Chicago, Rock Island & Pacific R.R. Co., 481 F.2d 326, 331-32 (8th Cir. 1973); Professional Communications, Inc. v. Contract Freighters, Inc., 171 F.Supp.2d 546, 550 (D. Md. 2001).

In this case, the negligence claim is unavailable even if not preempted by federal law because the facts fails to support the elements of the claim. At the outset, the Court observes that there is no evidence that the boring mill was loaded improperly. Further, there is no evidence that S.K. Rigging negligently selected EMS, Inc. to transport the boring mill. Even if there were, Michigan does not recognize a claim for negligent selection of an independent contractor. Reeves v. K-Mart, 299 Mich.App. 466, 582 N.W.2d 841 (1998).

In its response, Delta argues that S.K. Rigging is vicariously liable for EMS, Inc.'s negligence. Vicarious liability describes the existence of a relationship, not a cause of action. Because of this relationship, the principal is held responsible for the torts of its agent which are committed in the scope of the agency. Cronk v. Chevrolet Local 659, 32 Mich.App. 394, 401, 189 N.W.2d 16 (1971). The test of principal and agent is the right to control. Van Pelt v. Paull, 6 Mich.App. 618, 624, 150 N.W.2d 185 (1967). Plaintiff has offered no evidence in that regard, and the record contains no evidence to support a finding that S.K. Rigging had the right to control how EMS, Inc. delivered the boring mill. S.K.

13

Riggings had a contractual agreement with an independent contractor, not a agency relationship.

The evidence likewise fails to support Delta's alternative theory of "joint enterprise." A joint enterprise is defined as the "pursuit of an undertaking of two or more persons having a community of interest in the object and purposes of the undertaking and an equal right to direct and govern the movements and conduct of each, which arises only out of a contract or agreement between the party that may be expressed or implied." Troutman v. Ollis, 164 Mich. App. 727, 733, 417 N.W.2d 589 (1987) (discussing whether the negligence of the driver-defendant can be imputed to the passenger-plaintiff so as to bar the plaintiff's action against the defendant). According to Delta, the facts satisfy the elements of its claim because S.K. Rigging and Delta entered into an agreement; S.K. Rigging solicited EMS, Inc. to assist in fulfilling all of its obligations, provided EMS, Inc. with the information and direction; and loaded the boring mill onto a truck owned by EMS, Inc. Delta concludes that these facts place the relationship within the scope of a joint enterprise.

Michigan courts have not yet addressed whether the theory may be asserted offensively by an injured third party who is not a member of a joint enterprise to impute negligence. This Court declines to expand the theory to the situation before it. Here, there is no evidence that S.K. Rigging was involved in selecting the driver, the route, or even the truck. S.K. Rigging was not involved in measuring the vertical clearance of the load. Delta has made no showing that S.K. Rigging had a right to govern the movements and conduct of EMS, Inc. or its driver or vice versa. The only control exerted by S.K. Rigging was relative to the result to be accomplished; how it was accomplished was within the province of EMS, Inc.'s expertise. Accordingly, Delta's joint enterprise theory fails as a matter of

14

law.

In summary, the Court finds genuine issues of material fact exists as to S.K. Rigging's status relative to the Carmack Amendment; and that, in light of these issues, a judgment on Plaintiff's request for damages must be denied. Plaintiff has failed to advance sufficient evidence in support of its negligence claim against S.K. Rigging, and the Court finds it must be dismissed.

## V.  CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED as to Count II and DENIED as to Count I.

IT IS FURTHER ORDERED that the parties shall submit supplemental pleadings to the Court on or before September 30, 2005, as to whether Plaintiff can proceed with its claim relative to S.K. Rigging in this Court, in light of 49 U.S.C. § 14707.

IT IS SO ORDERED.


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Dated:    August 29, 2005



## CERTIFICATE OF SERVICE

15

Copies of this Order were served upon  Robert P. Anderson, Kurt D. Meyer and
Jerry R. Swift on this date by ordinary mail and/or electronic filing.


s/Bernadette M. Thebolt
Deputy Clerk